## SOUTHERN PAC. CO. v. STEVENS et al.

### (Circuit Court of Appeals, Ninth Circuit.   May 19, 1919.)

### No. 3269.

1. APPEAL AND ERROR ☞1053(3)—HARMLESS ERROR—EVIDENCE—CURE BY IN-
STRUCTION.

Where a complaint alleged that a certain agent of defendant carrier
agreed to furnish plaintiff live stock cars, any error in admitting a con-
versation regarding agreement by another agent is cured by instruction
that recovery must be based on contract made with agent named in com-
plaint.

2. EVIDENCE ☞355(1)—STATEMENT OF FREIGHT RATES—FAILURE TO FURNISH
CARS.

In action to recover for failure to furnish live stock cars, a written state-
ment of freight rates delivered to plaintiffs by defendant's agent and pre-
pared by clerk in agent's office is admissible, although not actually pre-
pared by agent himself.

3. EVIDENCE ☞357—TRIAL ☞85—FAILURE TO FURNISH LIVE STOCK CARS—
LETTERS AND TELEGRAMS—SPECIFIC OBJECTION.

In action for failure to furnish live stock cars, plaintiffs' telegrams and
letter to defendant demanding cars and threatening to hold it liable for
damages, etc., held admissible, and objection should have been specifically
made to any self-serving portions thereof.

4. CARRIERS ☞47(1)—AGENT'S AUTHORITY—CHIEF CLERK.

A chief clerk in manifest bureau of defendant railroad, with whom
plaintiffs claimed to have contracted regarding the furnishing of live
stock cars, held apparently authorized to represent defendant.

5. CARRIERS ☞69(5)—CONTRACT TO FURNISH CARS—AGENT'S AUTHORITY—JURY
QUESTION.

Evidence that chief clerk in manifest bureau of defendant railroad
acted as the traffic manager's assistant in agreeing to furnish plaintiffs'
live stock cars for shipment originating on a connecting road, etc., held
to make his authority to bind defendant a jury question.

6. APPEAL AND ERROR ☞928(2)—RESERVING GROUNDS FOR REVIEW—REQUEST-
ED INSTRUCTIONS.

Refusing requested instructions is not reversible error, where no ex-
ception was taken to general charge, since it will be presumed that charge
which was given properly presented all questions.

In Error to the District Court of the United States for the District
of Arizona; William H. Sawtelle, Judge.

Action by W. Samuel Stevens and Emmet C. Stevens, copartners
doing business under the firm name and style of the Stevens Cotton
Company, against the Southern Pacific Company.   Judgment for
plaintiffs, and defendant brings error.   Affirmed.

The defendants in error obtained judgment against the plaintiff in error for
$5,236.04 damages for failure to furnish cars under a contract to transport
362 head of dairy stock from Mt. Vernon, Wash., to Phœnix and Gila,
Ariz.  The parties will be named plaintiffs and defendant as in the court below.

There was evidence that the plaintiffs' agents applied to one Gatter, the
agent of the defendant at Phœnix, for information as to their contemplated
shipment.   Gatter referred them to Luce, the general freight and passenger
agent of the defendant at San Francisco.  They applied at the office of Luce,
and the chief clerk on learning their business told them that Frye had that
business in charge.  They discussed the details of the shipment with Frye, and

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

they testified that he told them that the defendant would handle the shipment promptly and furnish the cars; that it was not necessary to wire his office when ready to ship, but to notify the local agent of the Great Northern Railroad Company at Mt. Vernon, giving him four or five days' notice; and the plaintiffs were given a quotation of a rate from Mt. Vernon to Phœnix and Gila, Ariz. The plaintiffs then purchased the dairy stock, in the vicinity of Mt. Vernon, and on November 26, 1916, ordered the cars from the local agent of the Great Northern Railway Company at Mt. Vernon, Wash. That agent transmitted the order to the defendant, and on December 1st he received the information from the defendant that it could not furnish the stock cars "as yet," but would try to get some as soon as possible, and on the following day the defendant sent word that it was unable to furnish any cars at all. The plaintiffs made efforts to get the cattle shipped, but without avail, and finally shipped them by express to Stockton, Cal., and thence by freight by the Santa Fé to Phœnix. For the enhanced expense of shipping the cattle, and injury to the cattle caused by the delay, owing to storms and inadequate feeding facilities at Mt. Vernon, damages were awarded by the jury.

Francis M. Hartman, of Tucson, Ariz., and J. C. Forest, of Phœnix, Ariz. (Guy V. Shoup and Elmer Westlake, both of San Francisco, Cal., of counsel), for plaintiff in error.

Thomas Armstrong, Jr., Ernest W. Lewis, and R. Wm. Kramer, all of Phœnix, Ariz., for defendants in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] Error is assigned to the admission of evidence of a conversation which the plaintiffs' agents had with Gatter, in which the latter said that the defendant would handle the stock out of Mt. Vernon and give every facility therefor. This was objected to on the ground that the complaint had alleged that the contract was made with Frye at San Francisco. The testimony was admitted as preliminary to the conversation with Frye, and, if there was error in its admission, it was cured by the court's instruction to the jury that the plaintiffs could not recover on the basis of any contract made with Gatter.

[2] Error is assigned to the admission of a written statement of freight rates furnished the plaintiffs' agents at San Francisco, the ground of the objection having been that it was not prepared by Frye. It is a sufficient answer to this to say that the statement was furnished at the request of the plaintiffs' agents and was prepared by a clerk in Frye's office at his direction and was delivered by Frye.

[3] It is contended that it was error to admit in evidence certain exhibits to which objection was made, on the ground that they were self-serving, incompetent, immaterial, and irrelevant. The exhibits consisted of, first, two identical telegrams sent by the plaintiffs on December 5, 1916, one to Luce, the other to Hinshaw, general agent of the defendant at Portland, Or., stating that, after the negotiations regarding stock cars, the plaintiffs had purchased nearly 400 head of cattle, which they were then holding under heavy expense, and that they were damaged by delay, and adding:

"Have made strong demands through local office for cars immediate shipment and now appeal to you direct. Shall hold Southern Pacific responsible for all feed, expenses, deaths, damages suffered through delay. Answer."

It was proper for the plaintiffs to show that they were making every effort to obtain cars from the defendant and were advising them of the importance of having the cars on hand. If there were any self-serving statements in the dispatch, objection should have been directed specifically to these portions thereof, not to the whole body of the dispatch. The same may be said in regard to the dispatch of December 6, 1916, sent by the plaintiffs to Hinshaw, and the letter of December 5, 1916, sent to Luce. In the letter the writer said:

"Have made strong demands through local office for cars immediate shipment, and now appeal to you direct. * * * I will certainly appreciate all immediate efforts possible to stop this tremendous cost to your company and myself. * * * I feel sure that you will appreciate my position in this matter and make every effort to satisfy my losses and facilitate the shipment without further delay."

It is to be observed that the agents of the defendant made no denial of the statements contained in these communications, and apparently accepted the same as stating the truth of the situation. On December 5, 1916, Hinshaw answered the plaintiffs' dispatch to him saying:

"Southern Pacific appreciates your situation and will do everything possible assist, but cannot guarantee furnish cars. Will wire Gatter what can accomplish, but meantime suggest wiring your representative Mt. Vernon continue his efforts. Have Great Northern supply cars."

Before the plaintiffs could render the defendant liable for the additional cost of shipping the cattle by express, it was necessary for them to exhaust every remedy and make every effort to obtain the promised cars. The dispatches and the letters are evidence that they fulfilled that obligation. We are not convinced that the admission of the exhibits was error for which the judgment should be reversed.

[4, 5] Error is assigned to the denial of the defendant's motion for an instructed verdict in its favor. It is urged that the motion should have been sustained for want of proof of Frye's authority to make a contract for the defendant. Frye was the head clerk in the manifest bureau, and in the office of the general freight agent of the road he dealt with the plaintiffs and furnished them quotations of freight rates and, according to their testimony, entered into the contract. He was apparently clothed with authority to represent the defendant in making a contract, and the plaintiffs had the right to rely on his assumption of such authority. 10 C. J. 216, and cases there cited; Northern Pac. R. Co. v. American Trading Co., 195 U. S. 439, 462, 25 Sup. Ct. 84, 49 L. Ed. 269; Aerne v. Gostlow, 60 Or. 113, 118 Pac. 277; Brace v. Northern Pac. R. Co., 63 Wash. 417, 115 Pac. 841, 38 L. R. A. (N. S.) 1135. But the principal question here involved is whether there was evidence sufficient to go to the jury to show that Frye in addition to the ordinary authority of an agent had authority to make this particular contract; the general rule being that the principal is not bound by the contract of a local agent for transportation over a connecting line in the absence of express authority or a course of business from which such authority may be inferred. The cattle were to be carried from Mt. Vernon on the line of the Great Northern to Portland, a distance of 252 miles, and thence on the defendant's line a distance of

about 2,000 miles to points in Arizona. That they were to be carried through without unloading at Portland is shown by Frye's letter to Hinshaw of November 21, 1916, which was written in the name of Luce, "Freight Traffic Manager." There is little evidence on the subject of Frye's authority to make a contract to furnish cars at a point on a connecting road. There is evidence in the case, however, which seems to indicate that such was the course of business of the defendant, and that such was the understanding, not only of Frye, but of the agents of the defendant at Phœnix, Portland, and Seattle. Frye gave the plaintiff a statement of rates, evidently estimated as for the service of the defendant's cars, from Mt. Vernon to Gila and Phœnix, and Frye, on cross-examination, testified:

"If the agent at Mt. Vernon should want Southern Pacific cars, he would make out an application to his superintendent for these cars, and the Great Northern would transmit that order to the Southern Pacific Company, and, if the Southern Pacific Company had the cars that they could furnish, I have no doubt but that they would let the cars go up on the Great Northern."

We think sufficient appears to warrant the jury in finding that Frye was pursuing a customary and authorized course of business in entering into, if he did enter into, the contract which was alleged in the complaint. And here the contract was not made by a local agent of the defendant. Frye in making it acted as assistant to Luce, the general traffic manager of the defendant. In Northern Pacific Ry. Co. v. Amer. Trading Co., 195 U. S. 439, 462, 25 Sup. Ct. 84, 91 (49 L. Ed. 269), it was said:

"A railroad company has the power, as we have seen, to make such a contract of carriage beyond its lines. A general agent would be presumed to have such power."

See, also, White v. Mo. Pac. Ry. Co., 19 Mo. App. 400; Bigelow v. Chicago, Burlington & N. R. Co., 104 Wis. 109, 80 N. W. 95.

We find no error in the denial of the motion for an instructed verdict.

[6] Error is assigned to the refusal of certain instructions requested by the defendant. The bill of exceptions recites that no exception was taken to the general charge. The general charge is not incorporated in the record. In such a case, it will be presumed that the charge which was given properly presented to the jury all questions involved in the case, and error cannot be predicated upon the refusal of requested instructions. Johnston v. United States, 154 Fed. 445, 83 C. C. A. 299; Northern Pac. Ry. Co. v. Tynan, 119 Fed. 288, 56 C. C. A. 192; Columbia Mfg. Co. v. Hastings, 121 Fed. 328, 57 C. C. A. 504; Union Mut. Life Ins. Co. v. Payne, 105 Fed. 172, 45 C. C. A. 193.

The judgment is affirmed.